**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

———————————————————

ALEJANDRO ORTEGA,          )
                                       )

                  Plaintiff,       )

                                       )

       v.                           )        Case No. 23-cv-2417 (GMH)

                                       )

ALEJANDRO MAYORKAS, Secretary )
of Homeland Security, *et al.*,      )
                                       )

                 Defendant.     )

———————————————————

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Alejandro Ortega, a Customs and Border Patrol ("CBP") Officer, has sued Secretary of Homeland Security Alejandro N. Mayorkas and the U.S. Department of Homeland Security (together, "Defendants" or "the agency") under the Rehabilitation Act, 29 U.S.C. § 791 *et seq.*; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.* Plaintiff's thirteen-count complaint alleges that the agency discriminated against him on the basis of a disability by delaying its responses to or outright denying his requests for reasonable accommodations (Count I); discriminated against him on the basis of sex, discriminated him on the basis of disability, and retaliated against him when it denied his December 2018 request for light duty and a transfer from his duty station in Presidio, Texas, to El Paso, Texas (Counts II (sex discrimination), III (disability discrimination), and IV (retaliation)); discriminated against him on the basis of disability and retaliated against him when it failed to reinstate him to full duty in late 2019 through June 2020 (Counts V (disability discrimination) and VI (retaliation)); discriminated against him on the basis of disability and retaliated against him when it failed to

grant him "Weather and Safety Leave" in May 2020 (Counts VII (disability discrimination) and VIII (retaliation)); unlawfully disclosed his private medical information (Count IX); interfered with his rights under the FMLA by unreasonably delaying its response to his May 2019 request for medical leave (Count X); violated the APA by failing to provide him notice that, while he was on medical leave in late 2018, he was required to pay his health insurance premiums (Count XI); and subjected him to a discriminatory and retaliatory hostile work environment (Counts XII (discriminatory hostile work environment) and XIII (retaliatory hostile work environment)). Defendants have moved to dismiss the bulk of Plaintiff's claims under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject-matter jurisdiction due to Plaintiff's alleged failure to properly exhaust administrative remedies and/or Rule 12(b)(6) for failure to state a claim. Specifically, Defendants seek dismissal of Counts I, III, and IV (related to Plaintiff's light duty/transfer request) and Count IX (related to the alleged disclosure of medical information) for failure to exhaust and failure to state a claim; Count II (related to Plaintiff's light duty/transfer request) and Count XI (related to notice regarding payment of health insurance premiums) for failure to exhaust; Counts VII, VIII (both related to Plaintiff's request for Weather and Safety Leave), XII, and XIII (both related to an alleged hostile work environment) for failure to state a claim; and Count X (related to Plaintiff's May 2019 request for FMLA leave) as barred by the statute of limitations.[1]

After a thorough review of Defendants' motion and the record,[2] the Court grants in part and denies in part the motion to dismiss.

---

[1] Defendants have not moved to dismiss Counts V and VI, related to the agency's failure to return Plaintiff to full duty.

[2] The docket entries relevant to this Memorandum Opinion and Order are (1) the Complaint, ECF No. 1; (2) Defendants' motion to dismiss and supporting documents, ECF No. 9 through 9-3; (3) Plaintiff's opposition, ECF No. 12; and (4) Defendants' reply, ECF No. 13.  Page numbers cited herein are those assigned by Court's CM/ECF system.

# I.   BACKGROUND

## A.   Factual Background

The following allegations are derived from Plaintiff's Complaint and are taken as true. Therein, he alleges that, on November 17, 2018, while on duty as a CBP officer in Presidio, Texas, he experienced shortness of breath and swelling of his right arm.  ECF No. 1, ¶ 16.  His first-line supervisor denied his request to leave his shift early to seek medical attention, so he finished his shift and then sought treatment at an emergency room four hours away in El Paso, Texas, where he was informed that he had suffered a life-threatening pulmonary embolism.  *See id.*, ¶¶ 12, 17–19.  On November 18, 2018, Plaintiff was placed on medical leave, which required him to use a combination of unpaid leave, sick leave, annual leave, and donated leave.  *See id.*, ¶ 21.  In December 2018, Plaintiff's "prescription and medical bills began getting denied retroactively" by his health insurance provider.  *Id.*, ¶ 171; *see also id.*, ¶ 22.[3]  Plaintiff alleges this occurred because the agency failed to provide him legally required notice of his option to pay his own health insurance premiums when he entered "leave without pay" status around that time and that the agency also "retroactively terminated" his health benefits.  *See id.*, ¶¶ 167–169, 172.  The termination of his insurance caused him to suffer "significant economic damages."  *Id.*, ¶ 173.

---

[3] The Complaint first alleges that the complications surrounding his health insurance occurred in December 2018 but then alleges that they occurred in December 2019.  *Compare id.*, ¶ 22 ("While Plaintiff was on administrative leave due to his medical condition, he found out on December 11, 2018, that, without Plaintiff's knowledge or consent, his health insurance had been terminated.") *with id.*, ¶ 172 ("Upon information and belief, Defendant, without prior notice to or consent by Plaintiff and without proper authorization, retroactively terminated Plaintiff's health benefits as of the date of his leave without pay in December of 2019.").  The Court assumes that the correct year is 2018, as that is the year cited in the Final Agency Decision.  *See* ECF No. 9-2 at 2 ("On December 11, 2018, the Agency suspended Complainant's health insurance.").

While he was on medical leave, on December 7, 2018, Plaintiff requested a light duty assignment in El Paso, Texas, the location closest to where he received treatment for his condition.[4] *See id.*, ¶¶ 24, 26. On December 10, 2018, he requested a medical hardship transfer to that same location. *See id.*, ¶ 24. Plaintiff asserts that two of his first-line supervisors told his colleagues that he was faking his condition so that he would be transferred. *See id.*, ¶ 28. Both requests were denied—the medical hardship request on March 19, 2019, and the light duty request on April 24, 2019—on the basis that there were no vacancies at that duty station. *See id.*, ¶¶ 25–26. According to Plaintiff, however, a number of female officers were granted medical transfers to El Paso at around the time Plaintiff's requests were made and denied. *See id.*, ¶¶ 93–95, 97. Plaintiff filed a grievance with his labor union regarding the denial of his transfer requests. *See id.*, ¶ 27.

At some point in early 2019, the Port Director of the Presidio, Texas station requested that Plaintiff undergo a "fitness for duty" examination. *See id.*, ¶¶ 12, 30. At a meeting with that Port Director on May 3, 2019, Plaintiff provided a medical note allowing him to return to work with certain restrictions. *See id.*, ¶ 29. The Port Director thereafter canceled the examination and Plaintiff began light duty at the Presidio facility on May 9, 2019. *See id.* ¶¶ 30–31. On May 24, 2019, Plaintiff received a settlement agreement—apparently in connection with the grievance he had filed with his labor union—stating that he would be reassigned to the Santa Teresa Port of entry—a location closer to El Paso—as of June 9, 2019. *See id.*, ¶ 32; ECF No. 9-1 at 9–10; ECF No. 9-2 at 4 (Final Agency Decision).[5]

---

[4] In the Complaint, Plaintiff states that he made the request for a light duty assignment on December 7, 20*19*. *See id.*, ¶ 26. That appears to be an error. *See* ECF No. 9-2 at 4 (Final Agency Decision stating, "On December 7, 2018, Complainant submitted a request for temporary light duty").

[5] On a motion to dismiss under Rule 12(b)(6), courts are limited to considering information within "the 'four corners of the complaint, . . . any documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies,'" as well as "facts of which the Court may take judicial notice." *Brown v. Gov't of D.C.*, 390 F. Supp. 3d 114, 122 (D.D.C. 2019) (quoting *Tyson v. Brennan*, 306 F. Supp. 3d 365, 369 (D.D.C. 2017). The Final Agency Decision on Plaintiff's formal administrative complaint is not attached to Plaintiff's

On August 5, 2019, two months after Plaintiff's transfer to Santa Teresa, one of his first-line supervisors requested that Plaintiff undergo a fitness for duty examination. *See* ECF No. 1, ¶ 34. Plaintiff complained that Presidio's Port Director had canceled the fitness for duty exam prior to his transfer. *See id.*, ¶ 34–35. The supervisor checked with Santa Teresa's Port Director, Fernando Thome, who, after Plaintiff was escorted to his office, asserted that "people such as [Plaintiff]" were "a liability" and there was "no place for individuals such as [Plaintiff]" at CBP or at the port of Santa Teresa. *Id.*, ¶ 38. Plaintiff submitted to the examination on August 20, 2019. *See id.*, ¶ 39. Then, on September 10, 2019, Linda Rodriguez, the chief of the section to which Plaintiff had been assigned, questioned Plaintiff about his claim for worker's compensation related to the pulmonary embolism. *See id.*, ¶ 40. She also called a Mission Support Specialist, who stated, "No way is this agency responsible for what happened to [Plaintiff] and if the Department of Labor wants to side with him, we will fight it every step of the way." *Id.*, ¶ 41. Thereafter, Rodriguez offered to be Plaintiff's "advocate" because he was on "Thome's radar." *Id.*, ¶ 42.

In late September, the final report from Plaintiff's fitness for duty examination found that Plaintiff was not fit for duty. *See id.*, ¶ 43. On October 2, 2019, Plaintiff provided Thome a medical note from a nurse practitioner who worked with Plaintiff's primary care physician asserting that Plaintiff could return to full duty without restrictions. *See id.*, ¶¶ 44–45. Assistant Port Director John Hawkins rejected the opinion because it was made by a nurse practitioner. *See id.*, ¶ 46. Plaintiff then provided a similar note from his primary care physician, as well as one from his hematologist; Thome refused to release Plaintiff to full duty based on that documentation. *See id.*,

---

Complaint in this Court but is attached to Defendants' motion to dismiss. *See* ECF No. 9-2. However, because Plaintiff's Complaint here refers to the administrative process and the final decision of the agency on his administrative complaint, the Court will consider it in connection with Defendants' 12(b)(6) motion. *See* ECF No. 1, ¶ 6; *Cause of Action v. Nat'l Archives & Recs. Admin.*, 926 F. Supp. 2d 182, 185 (D.D.C. 2013) ("'Documents that are referenced in, or are an integral part of, the complaint are deemed not "outside the pleadings"' for purposes of a motion to dismiss for failure to state a claim." (quoting *Norris v. Salazar*, 885 F. Supp. 2d 402, 407 n.9 (D.D.C. 2012)), *aff'd*, 753 F.3d 210 (D.C. Cir. 2014).

¶¶ 47–48.  After Plaintiff complained to the Assistant Director of Field Operations, Thome and one of Plaintiff's first-line supervisors herded Plaintiff into Rodriguez's office.  *See id.*, ¶ 50.  Thome, allegedly angry and threatening, told Plaintiff that his prior medical notes were "too short" and gave Plaintiff a document affording him fifteen days to provide "administratively acceptable" medical documentation before Thome "stormed out."  *Id.*, ¶¶ 51–54.  Thereafter, Rodriguez's manner toward Plaintiff changed and he observed her "winking at him in a menacing and taunting" manner.  *Id.*, ¶ 55.

On November 8, 2019, Plaintiff met with two labor employment specialists, asserting that he felt harassed by Thome and that, on October 15, 2019, an individual in management had disclosed Plaintiff's medical condition to co-workers.  *See id.*, ¶ 57.  Plaintiff also sent an email to Thome stating that Plaintiff felt Thome was harassing him.  *See id.*, ¶ 56.

Having received an extension of time to supply medical documentation, Plaintiff provided an updated note from his primary care physician on December 13, 2019, which was forwarded to the Medical Review Officer.  *See id.*, ¶ 59.  On January 30, 2020, Thome responded that the Medical Review Officer required further information and that the note from Plaintiff's primary care physician was unacceptable.  *See id.*, ¶ 60.  In a letter of February 19, 2020, Thome informed Plaintiff that such additional information was necessary because of "conflicting medical conclusions regarding [his] continued fitness for duty" and extended the deadline to supply such information.  *Id.*, ¶ 61.  Plaintiff informed management that to get the supplemental documentation he would have to make an in-person visit to his hematologist in Wisconsin and the earliest appointment was April 29, 2020.  *See id.*, ¶ 63.  Because of COVID-19 restrictions requiring Plaintiff to quarantine for fourteen days after his return from Wisconsin, on April 23, 2020, Plaintiff submitted a request for Weather and Safety Leave to begin on April 28, 2020, and last until May

17, 2020. *See id.*, ¶¶ 64–65. On April 28, 2020, the Chief CBP Officer "chastised, scrutinized, humiliated, and verbally attacked Plaintiff" during a meeting that culminated in an initial denial of his request for Weather and Safety Leave. *Id.*, ¶ 67. Plaintiff followed up in a May 10, 2020 memorandum to Thome and Hawkins noting that no explanation was given for the denial of his leave request. *See id.*, ¶ 68. Hawkins responded the same day, denying the request for leave, allegedly "through an incorrect interpretation of the relevant rule." *Id.*, ¶ 69.

Plaintiff then scheduled an appointment with the Deputy Director of Field Operations, apparently to discuss the leave request and a return to full duty. *See id.*, ¶ 71. At that July 12, 2020 meeting, the Deputy Director "waved Plaintiff's restoration papers in Plaintiff's face" and was "irritated that Plaintiff had rejected [a proposed] settlement agreement"[6] related to the denial of his request to be returned to full duty. *Id.*, ¶¶ 72, 136. That same day, Plaintiff was informed that he would be returned to full duty,[7] as the medical documentation he had provided was sufficient. *See id.*, ¶ 73. Plaintiff alleges that the decision to return him to full duty was made in reliance on the documentation he provided in December 2019. *See id.*, ¶ 75.

Meanwhile, back in May 2019, prior to Plaintiff beginning light duty at the Presidio, Texas station, Plaintiff requested FMLA leave, submitting paperwork to a Mission Support Supervisor in El Paso. *See id.*, ¶ 76. According to Plaintiff, the request was not processed, and in August 2019, his request "came into [the] possession of" Rodriguez, the chief of the section to which Plaintiff was assigned; Thome was also aware of the request in August 2019. *Id.*, ¶¶ 78–79. On September 18, 2019, Hawkins instructed Plaintiff to submit a memorandum supporting his request,

---

[6] This is a different settlement agreement than the one from May 2019 that directed his reassignment to Santa Teresa. *See id.*, ¶¶ 32, 136–137.

[7] The Complaint asserts that the letter returning Plaintiff to full duty was dated *June* 12, 2020, but that appears to be a typographical error. *See* ECF No. 9-2 at 6 (Final Agency Decision stating, "By letter dated July 12, 2020, . . . Complainant [was notified] that he was being returned to full duty").

which Plaintiff provided that same day.  *See id.*, ¶ 81.  After Plaintiff followed up on his request with an email to Thome on September 30, 2019, he received word form Hawkins that his FMLA request had been approved on September 18, 2019.  *See id.*, ¶ 82.

**B.    Procedural Background**

Plaintiff initiated Equal Employment Opportunity ("EEO") counseling on December 23, 2019, after he submitted medical documentation on December 13, 2019, in connection with his request to return to full duty.  *See id.*, ¶¶ 119, 130.[8]  He received no immediate response.  *See id.* Plaintiff filed a formal complaint on March 25, 2020.  *See* ECF No. 9-2 at 2.

The Final Agency Decision, issued on March 14, 2022, addressed Plaintiff's allegations that the agency discriminated against him and subjected him to a hostile work environment "based on sex (male), disability, and reprisal" predicated on seventeen factual allegations: (1) the failure of Plaintiff's first-line supervisor at the Presidio station to allow him to seek treatment in November 2018; (2) the suspension of his health insurance in December 2018; (3) the denial in April 2019 of his request for a light duty assignment in El Paso; (4) the nearly five-month delay— from the beginning of May 2019 to the end of September 2019—in processing his FMLA request; (5) the direction in August 2019 that he undergo a fitness for duty examination; (6) Thome's August 2019 comment that Plaintiff was a liability and did not belong at the agency; (7) the September 2019 statement by agency personnel that the agency would fight Plaintiff's worker's compensation claim "every step of the way"; (8) the agency's failure to return Plaintiff to full duty from October 2019 to June 2020; (9) the improper disclosure of Plaintiff's medical information in October 2019; (10) Thome's treatment of Plaintiff at the November 7, 2019 meeting regarding Plaintiff's

---

[8] At one point, the Complaint asserts that Plaintiff initiated the informal process on December 23, 20*20*, but that seems to be a typographical error.  *See* ECF No. 9-2 at 1 (Final Agency Decision stating, "On December 23, 2019, Complainant initiated contact with an Equal Employment Opportunity . . . Counselor").

reinstatement to full duty; (11) the requirement at that same meeting that Plaintiff provide further medical documentation; (12) Rodriguez's threatening treatment of Plaintiff since that November 7, 2019 meeting; (13) the failure of the agency to take action on Plaintiff's complaints of November 8, 2019, about Thome's harassment; (14) Thome's instructions to Plaintiff between January 2020 and April 2020 that Plaintiff must provide medical documentation from a hematologist; (15) the Chief CBP Officer's treatment of Plaintiff at the April 28, 2020 meeting; (16) the denial on April 28, 2020, of Plaintiff's request for Weather and Safety Leave; and (17) the failure of the agency to address Plaintiff's claims that the Chief CBP Officer was harassing him. *See* ECF No. 9-2 at 2–3. The agency denied all of Plaintiff's claims, finding that he had not established that he was the victim of disparate treatment when he was required to provide further medical documentation in connection with his request to return to full duty or when his request for Weather and Safety Leave was denied and that he had not established that he was subject to a hostile work environment. *See id.* at 9–13. Plaintiff appealed that decision to the Equal Employment Opportunity Commission, which also denied his claims and issued a right-to-sue letter on May 22, 2023. *See* ECF No. 1, ¶¶ 6–7.

Plaintiff filed his case in this Court on August 18, 2023. *See* ECF No. 1.

## II.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6)[9] challenges the sufficiency of a complaint on the basis that it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A court reviewing a 12(b)(6) motion must accept as true the well-pleaded factual allegations

---

[9] As noted above, Defendants also moved for dismissal under Rule 12(b)(1). A motion under that rule "presents a threshold challenge to the court's [subject-matter] jurisdiction" over the case before it. *Thomas v. Wash. Metro. Area Transit Auth.*, 305 F. Supp. 3d 77, 81 (D.D.C. 2018) (quoting *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987)). However, as discussed in note 10, *infra*, none of Defendant's arguments for dismissal are jurisdictional arguments. Rule 12(b)(1) is therefore not at issue here.

contained in the complaint, *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009), and construe those allegations "in the light most favorable to the plaintiff[]," *Vick v. Brennan*, 172 F. Supp. 3d 285, 295 (D.D.C. 2016); *see also, e.g.*, *Mirv Holdings, LLC v. U.S. Gen. Servs. Admin.*, 454 F. Supp. 3d 33, 41 (D.D.C. 2020) ("In evaluating a motion to dismiss under Rule 12(b)(6), 'the Court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" (quoting *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012))).   In addition to the allegations of the complaint, a court evaluating a motion under Rule 12(b)(6) may also consider "any documents either attached to or incorporated in the complaint[] and matters of which [the court] may take judicial notice." *Vasaturo v. Peterka*, 177 F. Supp. 3d 509, 511 (D.D.C. 2016) (second alteration in original) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)). Although the plaintiff need not make "detailed factual allegations" to avoid dismissal, he or she must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).   To meet that standard, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*   Nevertheless, "the burden is on the moving party to prove that no legally cognizable claim for relief exists." *Cohen v. Bd. of Trs. of the Univ. of the Dist. of Columbia*, 819 F.3d 476, 481 (D.C. Cir. 2016) (quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2015)).

## III.    DISCUSSION

### A.    Exhaustion and Timeliness

As noted, Defendants maintain that the following counts must be dismissed for failure to properly exhaust administrative remedies: Counts I, III, IV, and IX, brought under the Rehabilitation Act; Count II, brought under Title VII; and Count XI, brought under the APA.[10]

---

[10] A preliminary note:  Exhaustion requirements can be jurisdictional, such that a failure to exhaust deprives a federal court of subject matter jurisdiction, or merely prudential, so that a failure to exhaust will not affect the court's power to hear the case, although it may still require dismissal of the claim.  *See, e.g.*, *Fort Bend Cnty. v. Davis*, 587 U.S. 541, 548–49 (2019) ("The [Supreme] Court has . . . stressed the distinction between jurisdictional prescriptions and nonjurisdictional claim-processing rules, which 'seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times.'  A claim-processing rule may be 'mandatory' in the sense that a court must enforce the rule if a party 'properly raise[s]' it." (third alteration in original) (first quoting *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011), and then quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (*per curiam*))); *see also Henderson*, 562 U.S. at 435 ("We have urged that a rule should not be referred to as [jurisdictional] unless it governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction.  Other rules, even if important and mandatory, we have said, should not be given the jurisdictional brand." (alteration in original) (citations omitted)).  The proper vehicle for a motion to dismiss based on a jurisdictional exhaustion requirement is Rule 12(b)(1), while a motion to dismiss based on a prudential exhaustion requirement should be brought under Rule 12(b)(6).  *See, e.g.*, *Ware El v. Soc. Sec. Admin.*, No. 19-cv-1684, 2019 WL 5811299, at *2–3 (D.D.C. Nov. 7, 2019) (noting that "[a] Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction 'is inappropriate where a defendant claims that a plaintiff failed to comply with only the non-jurisdictional exhaustion requirement,'" because such a challenge should be brought under Rule 12(b)(6) (quoting *Cost v. Soc. Sec. Admin.*, 770 F. Supp. 2d 45, 49 (D.D.C. 2011))).

Defendants recognize this rule but misapply it.  They contend that a failure to exhaust a claim under the Rehabilitation Act deprives a federal court of subject matter jurisdiction and so a motion to dismiss should be brought under Rule 12(b)(1), whereas a failure to exhaust a claim under Title VII is not jurisdictional and therefore a motion to dismiss should be brought under Rule 12(b)(6).  (Defendants do not address whether a failure to exhaust an APA claim is a jurisdictional bar; as discussed below, it is not.)  However, the situation is more nuanced than that.  Defendants' exhaustion arguments are based on the rule that

> [t]o exhaust administrative remedies for a claim brought under the Rehabilitation Act or Title VII, the complainant must contact her agency's EEO counselor to initiate informal counseling "within 45 days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action."

ECF No. 9-1 at 19 (quoting 29 C.F.R. § 1614.105(a)(1)).  Because Plaintiff did not seek informal counseling until December 23, 2019, "Plaintiff's claims pertaining to events predating November 8, 2019"—which is 45 days before December 23, 2019—are not properly dismissed.  *Id.* at 20.  That is an accurate statement of the law.  In *Doak v. Johnson*, however, the D.C. Circuit held that "the [45-day] deadline for contacting an EEO Counselor is not jurisdictional."  798 F.3d 1096, 1104 (D.C. Cir. 2015); *see also id.* ("[T]his court has ruled that 'the administrative time limits created by the EEOC erect no jurisdictional bars to bringing suit.'" (quoting *Bowden v. United States,* 106 F.3d 433, 437 (D.C.Cir.1997)); *Williams v. Brennan*, 320 F. Supp. 3d 122, 128 (D.D.C. 2018) ("*Doak* made clear that *Spinelli* [*v. Goss*, 446 F.3d 159 (D.C. Cir. 2006), which held that the wholesale failure to file an administrative complaint deprives a federal court of jurisdiction over a claim under the Rehabilitation Act] does not extend to 'non-statutory step[s] preceding the formal agency exhaustion required by statute' that were 'created by EEOC regulation.'" (second alteration in original) (quoting *Doak*, 798 F.3d at 1104)).  And so, to the extent that Plaintiff's claims are dismissed because he did not timely engage in informal counseling, the dismissal will be under Rule 12(b)(6) rather than Rule 12(b)(1).  *Cf. Gallagher v. Eat to the Beat, Inc.*, 480 F. Supp. 3d 79, 85–86 (D.D.C. 2020) (noting that courts

They seek dismissal of Count X, brought under the FMLA, as time-barred by the statute of limitations.

As to exhaustion, Defendants argue that, because EEOC regulations require a claimant to seek informal counseling from an EEO counselor within 45 days of the date of the allegedly discriminatory act, Plaintiff's claims based on conduct that occurred prior to November 8, 2019, which is 45 days before he first sought counseling on December 23, 2019, were not properly exhausted. *See* ECF No. 9-1 at 19–20; *see also supra* note 10. Plaintiff has simplified the Court's work significantly: he concedes that Counts I through IV—which concern his December 2018 requests for a medical hardship transfer to El Paso and for a temporary light duty assignment in El Paso, denied on March 11, 2019, and April 24, 2019 , respectively—and Count IX—which relates to disclosure of his private medical information sometime prior to October 15, 2019, the date on which he allegedly learned of the disclosure—"should be dismissed for failure to exhaust administrative remedies." ECF No. 12 at 4; *see also* ECF No. 1, ¶¶ 83–111, 151–156. The Court will therefore dismiss those counts. *See, e.g.*, *Hill v. Bd. of Trs. of the Univ. of the D.C.*, 146 F. Supp. 3d 178, 186 (D.D.C. 2015) (dismissing a discrimination claim based on the plaintiff's concession that the claim was not exhausted); *Herrion v. Children's Hosp. Nat'l Med. Ctr.*, 786 F. Supp. 2d 359, 366 (D.D.C. 2011) (dismissing a claim based on the plaintiff's "explicit concession" that it should be dismissed).

Plaintiff also concedes that Count X, which alleges that the agency "improperly delayed" until September 30, 2019, its response to Plaintiff's May 2019 request to take FMLA leave, is barred by the statute of limitations. *See* ECF No. 12 at 5. An action under the FMLA must be brought within two years of "the last event constituting the alleged violation" or, if the violation is

---

may analyze a motion to dismiss that "erroneously rel[ies] on Rule 12(b)(1) . . . under Rule 12(b)(6), even if the defendant did not move to dismiss on that basis").

willful, with three years of that event.  *See* 29 U.S.C. § 2617(c)(1), (2).  Plaintiff filed this action

on August 18, 2023, more than three years after the decision on his request for FMLA leave.  It is

therefore untimely.  *See Herrion*, 786 F. Supp. 2d at 366 (dismissing a claim based on the plaintiff's

"explicit concession" that it should be dismissed).

That leaves Count XI, which Plaintiff frames as a claim under the Administrative Procedure

Act.  *See* ECF No. 1, ¶¶ 166–175.  Fairly read, that count alleges that Defendants illegally failed

to notify Plaintiff of his option to continue his health care benefits by paying his own premiums

when he was on leave without pay status in December 2019 and thereafter "retroactively cancel[ed]

coverage for periods over which he had already paid the premiums," violating the APA and causing

economic damages.  ECF No. 1, ¶¶ 167–174.  He cites 5 C.F.R. § 890.502, which provides that,

"when an employee enters a leave without pay . . . status," the employing agency must provide

written notice to the employee of his option to continue health insurance coverage by paying his

own premiums.  *See* 5 C.F.R. § 890.502(b)(1), (2).  He seeks declaratory and injunctive relief on

this count.  *See* ECF No. 1, ¶ 175.

Defendants maintain that this claim, "at bottom, alleges denial of certain insurance

benefits."  ECF No. 9-1 at 32.  Relying on that characterization, they then argue that that, under

the APA, "such claims are subject to mandatory exhaustion through the Office of Personnel

Management ["OPM"] before they may be advanced in federal court," citing a regulation that

requires an employee to submit any "health benefits claims . . . initially to the carrier of the covered

individual's health benefits plan" and, if denied, to seek reconsideration by the carrier and then

review by OPM.  *Id.* (quoting 5 C.F.R. § 890.105(a)(1)).  They then fault Plaintiff for "fail[ing] to

allege that he challenged administratively the denial of any of his benefits claims."  *Id.*  Plaintiff,

for his part, claims that Defendants have mischaracterized the claim as relating to denial of

benefits, when it is really a claim alleging a failure to provide legally required notice.[11]  *See* ECF No. 12 at 14.

Defendants' assertion that Plaintiff's complaint is deficient because he "failed to allege" that he exhausted this claim, ECF No. 9-1 at 32, is not well taken.  A plaintiff "must plead facts relating to exhaustion of administrative remedies only if that exhaustion is jurisdictional.  And to the contrary, if exhaustion is merely a 'claim-processing rule, the failure to pursue the required administrative remedies would be an affirmative defense, which the defendant [has] the burden of pleading and proving.'"  *RAI Care Ctrs. of Md. v. OPM*, 459 F. Supp. 3d 124, 133 (D.D.C. 2020) (quoting *T.H. v. District of Columbia*, 255 F. Supp. 3d 55, 59 (D.D.C. 2017)).  "The exhaustion requirement of the APA is prudential, rather than jurisdictional."  *Mdewakanton Sioux Indians of Minn. v. Zinke*, 264 F. Supp. 3d 116, 128 n.19 (D.D.C. 2017) (citing *John Doe, Inc. v. DEA*, 484 F.3d 561, 565 (D.C. Cir. 2007); *cf. RAI Care Ctrs.*, 459 F. Supp. 3d at 133 (finding that the exhaustion requirement of 5 C.F.R. § 890.105 is non-jurisdictional).  It is therefore Defendants' burden to establish that Plaintiff was required to, and did not, exhaust this claim.  They have not done so.

The Supreme Court has noted that a claim under the APA is "'subject to judicial review' when 'an aggrieved party has exhausted all administrative remedies expressly provided by statute or agency rule.'"  *Conservation Force v. Salazar*, 919 F. Supp. 2d 85, 90 (D.D.C. 2013) (emphasis omitted) (quoting *Darby v. Cisneros*, 509 U.S. 137, 146 (1993)); *see also, e.g.*, *DSE, Inc. v. United States,* 169 F.3d 21, 26–27 (D.C. Cir. 1999) ("Under the [APA], a party can seek judicial review

---

[11] Defendants say this is a "distinction without a difference" because Plaintiff "concedes that the lack of notice 'did eventually lead to unexpected denial of claims.'"  ECF No. 13 at 10 (quoting ECF No. 12 at 14).  The Court disagrees and sees a clear difference between a claim focused on lack of notice and a claim focused on denial of insurance claims.  *Cf. Hailu v. Morris-Hughes* No. 22-cv-20 (APM), 2023 WL 2184552, at *3 & n.2 (D.D.C. Feb. 23, 2023) (allowing a Section 1983 claim asserting lack of notice as a procedural injury to go forward when "tethered" to a concrete interest, namely, the non-payment of benefits).

from a final agency action without pursuing an intra-agency appeal unless required to do so by statute or by regulation.").  As noted, Defendant points to 5 C.F.R. § 890.105(a)(1), which outlines the exhaustion process where a health insurance carrier denies a claim.  *See* ECF No. 9-1 at 32; ECF No. 13 at 9.  But, as explained above, Plaintiff is not challenging the carrier's denial of his insurance claims; he alleges wrongdoing by CBP for failing to notify him of his rights regarding payment of insurance premiums as required by 5 C.F.R. § 890.502(b).  Defendants have pointed to no statute or agency rule that sets out an administrative review process for such a claim.  They have therefore not met their burden to show that Plaintiff was required to exhaust this claim prior to filing suit.[12]  *See Cohen*, 819 F.3d at 481 ("Rule 12(b)(6) places th[e] burden on the moving party.").

In sum, the Court dismisses Counts I, II, III, IV, IX, and X; Count XI survives for the present.

**B.      Denial of Weather and Safety Leave**

Defendants argue that Counts VII and VIII—Plaintiff's disparate treatment and retaliation claims related to the denial of his request for Weather and Safety Leave in May 2020—must be dismissed because Plaintiff plausibly alleges neither (1) that he was entitled to take Weather and Safety Leave nor (2) that he was denied the requested leave for discriminatory or retaliatory reasons.  *See* ECF No. 9-1 at 27–28; ECF No. 13 at 6–8.

---

[12] There may be other reasons that Count XI is infirm.  In *Gebert v. U.S. Department of State*, for example, the court dismissed a claim under the APA asserting that the plaintiff's employing agency "failed to provide [the plaintiff] with the required written notice" under 5 C.F.R. 890.502(b) because, since the plaintiff "d[id] not contend that the [agency's] failures have caused him any prospective injury, and damages for his past injuries would not be available under the APA," the putative error "was harmless."  No. 22-cv-2939, 2024 WL 1328439, at *9 (D.D.C. Mar. 27, 2024).  But here, Defendants make no such argument; they argue only that the claim should be dismissed for failure to exhaust. *See* ECF No. 9-1 at 31–32.

1.      Disparate Treatment

"A *prima facie* claim of disparate treatment (under [the Rehabilitation] Act) requires proof 'that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's . . . disability.'"  *Porfiri v. Eraso*, 121 F. Supp. 3d 188, 194 (D.D.C. 2015) (second alteration in original) (quoting *Baloch v. Kempthorne,* 550 F.3d 1191, 1196 (D.C. Cir. 2008)); *see also Rosen-Kellogg v. Mayorkas*, No. 22-cv-3028, 2023 WL 7697043, at *8 (D.D.C. Nov. 15, 2023) ("To establish a prima facie case of disability discrimination under the Rehabilitation Act, the plaintiff must allege that '(1) she was a qualified individual with a disability, (2) her employer knew of her disability, and (3) she suffered an adverse employment action because of her disability.'" (quoting *Congress v. District of Columbia*, 324 F. Supp. 3d 164, 175 (D.D.C. 2018))). However, "a plaintiff need not plead all elements of a *prima facie* case in his complaint to survive a motion to dismiss." *Porfiri*, 121 F. Supp. 3d at 194.  Rather, at the motion to dismiss stage, "the guiding lodestar is whether, assuming the truth of the factual allegations, taken collectively, [] the inferences of discrimination drawn by the plaintiff are reasonable and plausibly supported." *Townsend v. United States*, 236 F. Supp. 3d 280, 298 (D.D.C. 2017); *see also Redmon v. U.S. Capitol Police*, 80 F. Supp. 3d 79, 86 (D.D.C. 2015) ("Courts can . . . explore a plaintiff's *prima facie* case at the dismissal stage to determine 'whether the plaintiff can ever meet [her] initial burden to establish a *prima facie* case.'"  (some internal quotation marks omitted) (alteration in original) (quoting *Hutchinson v. Holder,* 668 F. Supp. 2d 201, 211–12 (D.D.C. 2009))).

As noted, Defendants argue first that Plaintiff failed to allege that he was entitled to Weather and Safety Leave and second that he has not alleged sufficient facts to show that his request was denied for reasons prohibited by the Rehabilitation Act.  ECF No. 9-1 at 27.  The Court addresses those arguments in reverse order.

"[T]he D.C. Circuit has cautioned that a court need not conduct a 'full causation analysis' when evaluating a plaintiff's *prima facie* case of disability-based discrimination to determine whether the adverse action resulted from the employer's knowledge of a plaintiff's disability." *Porfiri*, 121 F. Supp. 3d at 194 (quoting *Adeyemi v. District of Columbia,* 525 F.3d 1222, 1226 n.1 (D.C. Cir. 2008)).  Rather, "[a]s for showing an inference of discrimination, a plaintiff's burden 'at the pleading stage is not onerous.'" *Joyner v. Morrison & Foerster LLP*, No. 20-cv-1440, 2023 WL 6313194, at *5 (D.D.C. Sept. 27, 2023) (quoting *Redmon v. YMCA of Metro. Wash.*, 417 F. Supp. 3d 99, 102 (D.D.C. 2019)), *appeal docketed*, No. 23-7142 (D.C. Cir. Oct. 27, 2023). Defendant asserts that Plaintiff makes a single allegation regarding causation: that "Defendants denied Plaintiff's Weather and Safety Leave request because of his disability."  ECF No. 9-1 at 28 (quoting ECF No. 1, ¶ 144).  But that ignores the bulk of the relevant allegations in the Complaint. *See* ECF No. 12 at 12 ("Defendants next allege that the 'sum of [the] allegations' cited by Plaintiff regarding the [Weather and Safety Leave] issue is ¶[] 144 . . . of the Complaint, which obviously ignores that Count[] VII . . . 'repeat[s] the allegations contained [in the preceding paragraphs], as fully set forth herein.'"  (final two alterations in original)).  Again, fairly read and granting Plaintiff "the benefit of all inferences that can be derived from the facts alleged," *Hettinga*, 677 F.3d at 476 (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)), Plaintiff has plausibly claimed that Defendants denied his request for Weather and Safety Leave because of his disability.

The Complaint alleges that, in August 2019, not long after Plaintiff was transferred to Santa Teresa, he was ordered to undergo an examination to determine whether he was fit for duty; when he explained to Thome that the Port Director at his former duty station had canceled that examination based on medical documentation Plaintiff had provided, Thome responded that "people such as [Plaintiff] are a liability" and that Plaintiff did not belong in CBP or at Santa

17

Teresa.  ECF No. 1, ¶¶ 34, 37–38.  A month later, Rodriguez indicated to Plaintiff that he would need an "advocate" because he was on Thome's "radar."  *Id.*, ¶ 42.  When the fitness for duty examination found Plaintiff unfit, he submitted a note from his nurse practitioner stating that he could return to full duty, which was rejected; then a similar note from his primary care physician, which was rejected; then a similar note from his treating hematologist, which was rejected.  *See id.* ¶¶ 43–44, 46–48.  On December 13, 2019, having been told that his prior medical documentation was "too short," Plaintiff provided another note from his primary care physician.  *See id.*, ¶ 59.  When that note, too, was deemed unacceptable, Thome instructed Plaintiff to provide "medical documentation in narrative form from [Plaintiff's] treating [h]ematologist."  *Id.*, ¶¶ 60– 61.  Plaintiff then informed supervisors at the agency, including Thome, that, to do so, Plaintiff would need to travel to Wisconsin for an in-person appointment and, thereafter, quarantine for two weeks pursuant to an executive order of the governor of Texas.  *See id.*, ¶¶ 63–66.  Nonetheless, Plaintiff's request for Weather and Safety Leave to engage in that travel was denied—allegedly wrongfully.  *See id.*, ¶¶ 68–70.  About one month later, without receiving the requested documentation from Plaintiff's hematologist, Plaintiff was nevertheless returned to full duty.  *See id.*, ¶ 73.  The Court finds that, if true, these allegations—from Thome's initial disparagement of Plaintiff to the allegedly arbitrary disapproval of his medical documentation and subsequent about-face—plausibly allege that Plaintiff's request for Weather and Safety Leave was denied because of his disability.

The Court interprets the contention that Plaintiff "has not—and cannot—allege that he was entitled to take [the] Weather and Safety Leave" he sought, ECF No. 9-1 at 27, as two separate arguments.  First, that Plaintiff "has not" alleged he was entitled to take the requested leave; second, that he "cannot" do so.

The first argument is easily disposed of.  The Complaint alleges that the denial was wrongful.  Indeed, Plaintiff explicitly asserts that it was based on "an incorrect interpretation of the relevant rule."  ECF No. 1, ¶ 69.  Fairly read and granting Plaintiff "the benefit of all inferences that can be derived from the facts alleged," *Hettinga*, 677 F.3d at 476 (quoting *Schuler*, 617 F.2d at 608), that sufficiently alleges that he was entitled to take leave that was unjustifiably denied.

The contention that Plaintiff "cannot" allege that he was entitled to such leave appears to be an argument that he was not entitled to take such leave as a matter of law—if it were not, it would not support a motion to dismiss, because this Court may not resolve factual issues on a motion to dismiss.  *See, e.g.*, *Brown v. Corr. Corp. of Am.*, 603 F. Supp. 2d 73, 79 (D.D.C. 2009) ("[A] factual issue is plainly inappropriate to resolve on a motion to dismiss pursuant to Rule 12(b)(6)."); *see also Covad Commc'ns Co. v. Bell Atl. Corp.*, 398 F.3d 666, 676 (D.C. Cir. 2005) (noting that a defense that "depends upon a question of fact . . . is not cognizable in support of a motion to dismiss").  As support, Defendants cite a CBP memorandum allegedly governing Weather and Safety Leave at the time of the denial.  According to them, the agency reserved such leave "for employees that were prevented from performing their work at their approved location due to COVID-19."  ECF No. 9-1 at 27.  The memorandum providing guidance on Weather and Safety Leave is worth quoting at some length:

> This memorandum serves as a reiteration of previous discussions and direction concerning the use of Weather and Safety Leave (WSL). In June, Headquarters advised field offices to start returning CBP Officers and Agriculture Specialists who did not have a "High Risk" underlying health issue and who were not at risk for spreading COVID-19 to others. A recent report revealed that field offices still have a high number of personnel on WSL for other reasons.
>
> All employees who are on WSL for reasons other than those listed below should be returned to the traditional worksite or be provided work that can be performed remotely, as soon as practicable. For the purposes of the evolving response to COVID-19, WSL should generally only be granted for individuals who:

- **Have a high-risk underlying health issue**, as identified by the Centers for Disease Control and Prevention, that makes them particularly susceptible to contracting or experiencing complications from COVID-19,
- **Have been ordered to quarantine** by local authorities, or;
- **Have been exposed to COVID-19 and meet the "High-Risk Exposure" or "Medium Risk Exposure"** criteria established by CBP in the "COVID-19 CBP Guidance for Leadership Medical Officers and Supervisors".

ECF No. 9-3. Defendants maintain that they have established that Plaintiff was not entitled to take Weather and Safety Leave because Plaintiff (1) "does not allege that his travel was justified because he was a 'high-risk underlying health issue' who was 'particularly susceptible to contracting or experiencing complications from COVID-19," (2) does not "contend that he had been exposed to COVID-19 at the time that he had requested Weather and Safety Leave," and (3) "had not yet been ordered to quarantine at the time that he requested" the leave. ECF No. 13 at 7–8. Defendants' argument fails for multiple reasons.

First, contrary to Defendants' assertion, the memorandum they cite and attach to their motion to dismiss was not "incorporate[d] . . . by reference" into the Complaint. ECF No. 9-1 at 27 n.4. Plaintiff states merely that his request for leave was based on "an incorrect interpretation of the relevant rule." ECF No. 1, ¶ 69. But Defendants have not shown that the "relevant rule" is embodied the memorandum. Recall that Plaintiff first requested such leave in April 2020 and the request was formally denied in May 2020. ECF No. 1, ¶¶ 65–70. The memorandum Defendants rely on was signed on August 31 and September 1, 2020—*after* Plaintiff's request and its denial. And it indicates that it was not until June 2020—*also* after Plaintiff's request and its denial—that CBP Headquarters began clamping down on Weather and Safety Leave. ECF No. 9-3 at 1 ("In June, Headquarters advised field offices to start returning CBP Officers and Agriculture Specialists who did not have a 'High Risk' underlying health issue and who were not at risk for spreading

COVID-19 to others.").  It is not, therefore, proper for the Court to consider the memorandum on a motion to dismiss.

Second, even if the Court were to consider the memorandum, it would not be a reason to dismiss this claim.  Defendants have proffered a supposed legitimate, non-discriminatory reason for the denial: Plaintiff's request for leave was denied not because he was disabled, but because CBP guidance established that he was not entitled to take it.[13]  However, a plaintiff "does not need to 'anticipate legitimate, non-discriminatory reasons that may be proffered by the employer for the adverse employment action nor allege pretext to survive a motion to dismiss.'"  *Montgomery v. McDonough*, 682 F. Supp. 3d 1, 9 (D.D.C. 2023) (quoting *Townsend*, 236 F. Supp. 3d at 298); *see also Porfiri*, 121 F. Supp. 3d at 195 (same); *Reynoso v. All Foods, Inc.*, 908 F. Supp. 2d 330, 343 (E.D.N.Y. 2012) ("It is, of course, possible that the evidence will demonstrate that [Defendants] had legitimate nondiscriminatory and non-retaliatory reasons for [their] actions, but that is an issue to be decided on summary judgment, not at the motion to dismiss stage." (quoting *Robinson v. Gucci Am.,* No. 11 Civ. 3742, 2012 WL 259409, at *6 (S.D.N.Y. Jan. 27, 2012))).  Indeed, the D.C. Circuit "has been clear . . . that '[a]t the motion to dismiss stage, the district court cannot throw out a complaint even if the plaintiff did not plead the elements of a prima facie case.'"  *Brown v. Sessoms*, 774 F.3d 1016, 1023 (D.C. Cir. 2014) (second alteration in original) (quoting *Brady v.*

---

[13] Generally, discrimination (and retaliation) claims under the Rehabilitation Act are analyzed "using the three-step burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)."  *Cox v. Nielsen*, No. 16-cv-1966, 2019 WL 1359806, at *10 (D.D.C. Mar. 26, 2019) (quoting *Diggs v. Potter*, 700 F.Supp.2d 20, 40 (D.D.C. 2010)).

> Under that framework, the plaintiff must initially establish a prima facie case by a preponderance of the evidence. Once the plaintiff succeeds in making her prima facie showing, the burden of production shifts to the employer, who must articulate a legitimate, non-discriminatory reason for the challenged action.  If the employer successfully does so, the burden shifts back to the plaintiff to prove that the employer's proffered reason is a pretext masking discrimination or retaliation.

*Id.* (internal citations omitted).

*Office of Sergeant at Arms,* 520 F.3d 490, 493 (D.C. Cir. 2008)).  As Defendants' argument reaches past even the *prima facie* case, it cannot be grounds to grant their motion to dismiss this claim.

Third, if Defendants' proffer of a legitimate non-discriminatory reason for the denial of Plaintiff's request for Weather and Safety Leave based on the memorandum were an appropriate argument at this stage of the proceedings, it would not succeed.  Again, Defendants argue that CBP guidance embodied in the memorandum quoted above establishes as a matter of law that Plaintiff was not entitled to take that leave because he did not fit into one of the three categories outlined therein.  But the memorandum does not, by its terms, strictly limit the availability of Weather and Safety Leave to individuals who fit into one of those three categories.  Rather, it advises that Weather and Safety Leave "should *generally* only be granted for individuals" who do so.  ECF No. 9-3 at 1 (emphasis added).  The use of the word "generally" indicates that the guidance "will not invariably be followed."  *Am. Petroleum Inst. v. EPA*, 684 F.3d 1342, 1348 (D.C. Cir. 2012) (collecting cases).  More, there is a non-frivolous argument that Plaintiff *did* meet the requirements of the second category.   Plaintiff alleges that there was a standing executive order from the governor of Texas requiring those "traveling through a Chicago airport" to "adhere to a 14-day quarantine period" and that Defendants were aware of that order.  ECF No. 1, ¶ 122; *see also id.*, ¶ 65.  Thus, the question of whether Plaintiff was potentially entitled to take the leave he requested is a fact question inappropriate for resolution on a motion to dismiss under Rule 12(b)(6).  *See, e.g.*, *Covad Commc'ns*, 398 F.3d at 676; *Brown*, 603 F. Supp. 2d at 79.  And the fact that the evidence supporting Defendants' purportedly non-discriminatory reason for denying the leave request has been undermined bolsters the inference of causation.  *See, e.g., Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 90–91 (D.D.C. 2009) ("In evaluating the sufficiency of the complaint, the Court is mindful of the D.C. Circuit's caution that the threshold for pleading facts in support of

a . . . discrimination claim is a low one, and that district courts should not undertake a 'full causation analysis' in evaluating the sufficiency of the prima facie case. Merely alleging that the employer's proffered reasons for the adverse employment actions is false may support an inference of discrimination sufficient to survive a motion to dismiss." (internal citations omitted)).[14]  Count VII, alleging intentional discrimination related to the denial of Plaintiff's request for Weather and Safety Leave in May 2020 therefore survives Defendants' motion to dismiss.

### 2.     Retaliation

Defendants are no more successful in arguing that Plaintiff's retaliation claim should be dismissed. "To prove unlawful retaliation, an employee must establish three elements: that she made a charge or opposed a practice made unlawful" by the Rehabilitation Act, "that the employer took a materially adverse action against her, and that the employer took the action because of her protected conduct." *Feloni v. Mayorkas*, No. 22-cv-2094, 2023 WL 3180313, at *10 (D.D.C. May 1, 2023) (quoting *Allen v. Johnson*, 795 F.3d 34, 38–39 (D.C. Cir. 2015). Still, "the plaintiff need not allege the elements of a prima-facie case of retaliation at the initial pleading stage." *Glymph v. District of Columbia*, 180 F. Supp. 2d 111, 114 (D.D.C. 2001). Instead, "the Court must examine [the] . . . Complaint and determine—when all reasonable inferences are drawn in [Plaintiff's] favor—there are sufficient facts to make out a legally cognizable retaliation claim." *Urquhart-Bradley v. Cushman & Wakefield, Inc.*, 18-cv-2213, 2020 WL 4335523, at *2 (D.D.C. July 28, 2020).

---

[14] Defendants complain that Plaintiff does not allege that the agency "granted Weather and Safety Leave to non-disabled employees . . . for reasons aside from potential exposure to COVID-19." ECF No. 9-1 at 28. But alleging that a plaintiff "was treated differently from similarly situated employees who are not part of the protected class" is only "*[o]ne way* a plaintiff might cross the threshold from speculation into plausibility." *Joyner*, 2023 WL 6313194, at *5 (emphasis added); *see also George v. Levitt*, 407 F.3d 405, 412 (D.C. Cir. 2005) ("One method by which a plaintiff can satisfy the third prong of this test is by demonstrating that she was treated differently from similarly situated employees who are not part of the protected class. But this is not the only way." (internal citation omitted)).

Defendants' argument on this claim is identical to its argument above: (1) that Plaintiff "has not[] and cannot" allege that he was entitled to take Weather and Safety Leave and (2) that he has not sufficiently alleged that retaliation was the cause of the denial. ECF No. 9-1 at 27–28. Again taking the second concern first, Plaintiff must allege, among other things, that the adverse employment action post-dated protected activity. The first time Plaintiff engaged in protected activity while stationed at the Santa Teresa Port was on November 7, 2019, when he complained to the Assistant Directors of Field Operations that Thome "was harassing him based on his condition/disability." ECF No. 1, ¶ 49; *see, e.g.*, *Hall v. Washington Metro. Area Transit Auth.*, No. 19-cv-1800, 2020 WL 5878032, at *13 (D.D.C. Oct. 2, 2020) ("'When an employee communicates to her employer a belief that the employer has in engaged in . . . a form of employment discrimination,' as plaintiff did by reporting [her supervisor's] alleged comments and conduct towards her in relation to her disability . . . , 'that communication virtually always constitutes the employee's [protected] opposition to the activity.'" (first and fourth alterations in original) (emphasis omitted) (quoting *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009))). Thereafter, on November 8, 2019, Plaintiff sent an email to Thome asserting that he felt "accosted and harassed" and that Thome was creating "a hostile and threatening work environment." ECF No. 1, ¶ 56. That same date, he met with two labor employment specialists to complain about Thome. *See id.*, ¶ 57. As noted, he commenced informal counseling on December 23, 2019. *See id.*, ¶ 119. He filed a formal complaint on March 25, 2020. *See* ECF No. 9-2 at 2. His request for Weather and Safety Leave was formally denied on May 17, 2020. *See* ECF No. 1, ¶ 70.

Defendants assert that "[t]he sum total of his [causation] allegations are that 'Defendants denied Plaintiff's Weather and Safety Leave request . . . because he engaged in protected activity.'"

ECF No. 9-1 at 28 (quoting ECF No. 1, ¶ 148). A number of courts in this circuit have held that a plaintiff claiming retaliation need allege no more than that. *See, e.g.*, *Rochon v. Gonzales*, 438 F.3d 1211, 1220 (D.C. Cir. 2006) ("[I]in order to survive a motion to dismiss, 'all [the] complaint has to say' is 'the [defendant] retaliated against me because I engaged in protected activity.'" (second alteration in original) (internal citation omitted) (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 (D.C. Cir. 2000))); *Pressley v. Mgmt. Support Tech., Inc.*, No. 22-cv-2262, 2023 WL 5206107, at *13 (D.D.C. Aug. 14, 2023) (similar); *Bartlette v. Hyatt Regency*, 208 F. Supp. 3d 311, 323 (D.D.C. 2016) ("It is sufficient at [the motion to dismiss stage] for a plaintiff to plead causation 'simply by alleging that the adverse actions were caused by his protected activity.'" (quoting *Bryant v. Pepco*, 730 F. Supp. 2d 25, 32 (D.D.C. 2010))); *Munro v. LaHood*, 839 F. Supp. 2d 354, 364–65 (D.D.C. 2012) ("Plaintiff has alleged exactly enough to survive a motion to dismiss: he alleges that defendant 'retaliated against him for his opposition to defendant's unlawful employment practices and his participation in protected activity and the EEO process.'" (quoting the record)); *Winston v. Clough*, 712 F. Supp. 2d 1, 11 (D.D.C. 2010) (similar and collecting cases)); *but see Menoken v. McGettigan*, 273 F. Supp. 3d 188, 201 (D.D.C. 2017) (asserting that the standard cited above is incompatible with *Iqbal*). But here, other allegations serve to raise the inference of causation. "'[A] close temporal relationship may alone establish the required causal connection' for retaliation claims." *Rosen-Kellogg*, 2023 WL 7697043, at *12 (quoting *Singletary v. District of Columbia*, 351 F.3d 519, 525 (D.C. Cir. 2003)). Generally, a gap of less than three months between the most recent protected activity and the adverse employment action can raise the inference of causation.[15] *See, e.g.*, *Hamilton v. Geithner*, 666 F.3d 1344, 1358

---

[15] Defendants do not argue that the agency or the relevant actors were unaware of the complaint and, in any case, "at the prima facie stage the fact that [the plaintiff] submitted [a] complaint to the agency is sufficient" to show that the employer "knew of [the] complaint." *Hamilton v. Geithner*, 666 F.3d 1344, 1358 (D.C. Cir. 2012).

(D.C. Cir. 2012) (stating that "courts should consider later protected activity in determining whether evidence of temporal proximity satisfies the causation element" and finding that allegedly retaliatory action less than three months after protected activity raised the inference of retaliation on a motion to dismiss); *Rosen-Kellogg*, 2023 WL 7697043, at *12 ("[T]his Circuit has found that . . . a gap [of three months] between the protected activity and the adverse employment action negates the temporal proximity needed to prove causation[.]"  (final alteration in original) (quoting *Doe 1 v. George Washington Univ.*, 369 F. Supp. 3d 49, 73–74 (D.D.C. 2019))); *Harris v. Mayorkas*, No. 21-cv-1083, 2022 WL 3452316, at *14 (D.D.C. Aug. 18, 2022) (finding that a gap "pushing up against the edge of the three-month window courts in this Circuit have characterized as 'the outer limit' of temporal causation" was sufficient to infer a causal link at the motion to dismiss stage); *Clinton v. Perry*, No. 18-cv-991, 2019 WL 652344, at *4 (D.D.C. Feb. 15, 2019) ("Emphasizing the need for temporal proximity between protected activity and retaliatory act, *Hamilton* held that protected activity may occur at different times, *i.e.*, receiving EEO counseling, filing a formal EEO complaint, providing an investigatory affidavit, etc., and proximity to an adverse action should be measured from the last such protected activity."). Here, Plaintiff engaged in protected activity when he filed his formal EEO complaint on March 25, 2020. *See* ECF No. 9-2 at 2. Less than two months later, on May 17, 2020, his request was denied. *See* ECF No. 1, ¶ 70. At this stage of the proceedings, that is sufficiently close to suggest that the denial was retaliation for the filing of the complaint.

As to Defendants' contention that Plaintiff has not alleged and cannot allege that he was entitled to take Weather and Safety Leave, it fails for the reasons explained above in Section III.B.1. And the failure of that argument "may support an inference of [retaliation] sufficient to survive a motion to dismiss." *Nurriddin*, 674 F. Supp. 2d at 90–91.

Accordingly, this claim, too, survives the motion to dismiss.

### C.      Hostile Work Environment

In Count XII, Plaintiff asserts he was subject to a discriminatory hostile work environment; in Count XIII he raises a retaliatory hostile work environment claim.  *See* ECF No. 1, ¶¶ 176–183. Courts have held that the Rehabilitation Act covers claims for a hostile work environment.  *See Bain v. Off. of the Att'y Gen.*, 648 F. Supp. 3d 19, 59 (D.D.C. 2022) (collecting cases).  "To prevail on such a claim, a plaintiff must show that his employer subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment'" based on his disability. *Baloch*, 550 F.3d at 1201 (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)); *see also, e.g.*, *Hall*, 2020 WL 5878032, at *15.   "A hostile work environment 'can [also] amount to retaliation' if the employer creates such an environment after an employee engages in protected activity and a causal connection exists between the two."  *Hall*, 2020 WL 5878032, at *15 (alteration in original) (quoting *Baird v. Gotbaum*, 662 F.3d 1246, 1250 (D.C. Cir. 2011)). Defendants contend that both of Plaintiff's hostile work environment claims fail because his "allegations cumulatively fail to meet the objective standard of severe or pervasive conduct that alters the conditions of his employment."  ECF No. 13 at 11; *see also* ECF No. 9-1 at 32–38.

The relevant analysis requires the Court to look "'at all the circumstances,' including the 'frequency of the [alleged] discriminatory [or retaliatory] conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  *Vickers v. Powell*, 493 F.3d 186, 197 (D.C. Cir. 2007) (first alteration in original) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–

88 (1998)).  The Court must "assess the timeline of events as a whole," to determine whether the facts may plausibly support a conclusion that the conduct "alter[ed] the conditions of [the plaintiff's] employment and create[d] an abusive working environment." *Brooks v. Grundmann*, 748 F.3d 1273, 1276 (D.C. Cir. 2014) (quoting *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013)).  At this stage of the proceedings, the Court should not credit mere allegations that "'the cumulative effect of the [discrete] acts she endured was hostile.'  Rather, the Court must take the allegations that certain conduct occurred as true, and then determine whether those allegations contain enough factual material to raise a plausible inference that she was subjected to a hostile work environment." *Harris*, 2022 WL 3452316, at *15 (alteration in original) (quoting the record).  Even at the motion to dismiss stage, that is a "high bar." *Mitchell v. Garland*, No. 23-cv-2412, 2024 WL 3251217, at *5 (D.D.C. July 1, 2024) (quoting *Montgomery v. McDonough*, No. 22-cv-1715, 2024 WL 1344443, at *12 (D.D.C. Mar. 29, 2024)).

Two precepts guide this analysis.  First, although "a hostile work environment claim is not rendered invalid 'merely because it contains discrete acts that the plaintiff claims . . . are actionable on their own,'" *Brooks,* 748 F.3d at 1278 (quoting *Baird*, 662 F.3d at 1252), "courts in this Circuit [still] 'frown on plaintiffs who attempt to bootstrap their alleged discrete acts of retaliation into a broader hostile work environment claim,'" *Hartzler v. Mayorkas*, No. 20-cv-3802, 2022 WL 15419995, at *23 (D.D.C. Oct. 27, 2022) (quoting *Baloch v. Norton*, 517 F. Supp. 2d 345, 364 (D.D.C. 2007), *aff'd sub nom. Baloch v. Kempthorne*, 550 F.3d 1191 (D.C. Cir. 2008)), *aff'd*, No. 22-5310, 2024 WL 3219489 (D.C. Cir. June 28, 2024).  Rather,

> [the] acts giving rise to a hostile work environment claim must collectively meet the independent requirements of that claim (i.e., be "sufficiently severe or pervasive . . . []"), and must be adequately connected to each other (i.e., "all acts which constitute the claim are part of the same unlawful employment practice[]"), as opposed to being an array of unrelated discriminatory or retaliatory acts.

*Baird*, 662 F.3d at 1252 (internal citations omitted) (first quoting *Harris,* 510 U.S. at 21; and then quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002)).  Thus, "[a] plaintiff cannot simply combine every allegation of mistreatment . . . into a single count and label it a hostile work environment claim.  This is the 'kitchen sink' approach which is widely disapproved in this District."  *Toomer v. Carter*, No. 11-cv-2216, 2016 WL 9344023, at *14 (D.D.C. Mar. 24, 2016), *report and recommendation adopted sub nom. Toomer v. Mattis*, 266 F. Supp. 3d 184 (D.D.C. 2017); *see also Bain*, 648 F. Supp. 3d at 61 ("[T]he Court must keep in mind that [disparate treatment and hostile work environment] . . . claims often address distinct kinds of conduct, and an array of discrete discrimination and retaliation claims does not necessarily translate into a hostile work environment claim.").  Second, "courts typically do not find . . . work-related actions by supervisors to be sufficient for a hostile work environment claim."  *Aldrich v. Burwell*, 197 F. Supp. 3d 124, 138 (D.D.C. 2016) (alteration in original) (quoting *Munro*, 839 F. Supp. 2d at 366).  Even patterns of conduct including the occasional use of abusive language, unfair reprimands and criticism, and denials of leave requests have been found to be examples of "the ordinary tribulations of the workplace" as opposed to the "discriminatory intimidation, ridicule[,] and insult" considered "sufficiently severe or pervasive to . . . create an abusive working environment."  *Nurriddin*, 674 F. Supp. 2d at 93–94 (D.D.C. 2009) (first quoting *Faragher*, 524 U.S. at 787; and then quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998)).

Plaintiff highlights the following allegations as comprising his hostile work environment claims:

- In early 2019, two supervisory CBP officers at the Presidio duty station told Plaintiff's colleagues that Plaintiff "was faking his illness" to get a transfer to El Paso.

- Personnel in El Paso and at the Santa Teresa duty station, including Thome, delayed responding to his request for leave under the FMLA from May 2019 to September 2019.

- On August 5, 2019, supervisors at the Santa Teresa duty station, including Thome, required Plaintiff to undergo a fitness for duty examination despite that fact that the Port Director at Presidio had canceled the one he ordered.

- On that same date, Thome told Plaintiff that he did not belong at CBP or at the Santa Teresa duty station.

- On September 10, 2019, a Mission Support Specialist stated that the agency would oppose Plaintiff's claim for worker's compensation.

- On four occasions in early October 2019 and mid-December 2020, supervisors at the Santa Teresa duty station, including Thome, rejected medical notes asserting that Plaintiff was fit to return to full duty.

- On October 15, 2019, a supervisor at the Santa Teresa duty station disclosed to others Plaintiff's private medical information.

- On November 7, 2019, a different supervisor at the Santa Teresa duty station escorted him to Rodriguez's office, where Thome yelled at Plaintiff, threatened him, "slammed" documents "down on a table in front of him," refused to answer Plaintiff's legitimate questions about the documents, and "stormed out" while loudly chastising Plaintiff.

- In April and May 2020, supervisors at the Santa Teresa duty station, including Thome, delayed responding to his request for Weather and Safety Leave, chastised him for requesting it, and wrongfully denied the request.

*See* ECF No. 12 at 17–18; *see also* ECF No. 1, ¶¶ 28, 34–38, 40–41, 44, 46–48, 50–51, 57, 59–60, 76–82.  The Court finds that these incidents do not clear the "high bar" for alleging a hostile work environment claim.  *Mitchell*, 2024 WL 3251217, at *5 (quoting *Montgomery*, 2024 WL 1344443, at *12).

First, a number of these allegations "involve nothing more than the type of 'ordinary . . . vicissitudes of the workplace' that do not amount to actionable harassment."  *Fields v. Vilsack*, 207 F. Supp. 3d 80, 93 (D.D.C. 2016) (alteration in original) (quoting *Alvarado v. Donahoe*, 687 F.3d 453, 461 (1st Cir. 2012)).  For example, in *Hartzler*, this Court found that the

Plaintiff had not established a hostile work environment claim by alleging, among other things, that she was "micromanaged" and "scrutinized"; her leave requests were unfairly denied; and she was "verbally ridiculed," including by "having her medical conditions insulted and discussed openly."   2022 WL 15419995, at *22.   In *Nurriddin*, allegations that managers "unfairly reprimanded and criticized" the plaintiff, made disparaging remarks about his EEO complaints, denied his leave requests, "engaged in a series of discussions to end his eligibility for workers' compensation and to terminate his employment," and eventually fired him, did not make out a hostile work environment claim.  674 F. Supp. 2d at 93–94.  In *Doe v. Garland*, comments that the plaintiff was being fired and was "unworthy," a demand that he provide medical information on a tight schedule even though he had already submitted such documentation, "public[] ridicule[]" by supervisors in a "fishbowl meeting room" that was then entered by two "armed agents" and resulted in an emergency room visit by the plaintiff, along with other allegations of mistreatment, did not "not rise to the severe or pervasive level necessary 'to pollute the work environment' and 'alter[] the conditions'" of the plaintiff's employment.  No. 18-cv-4, 2021 WL 4502038, at *12–14 (D.D.C. Sept. 30, 2021) (quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 452 (2013) (Ginsburg, J., dissenting)).   The court in *Morales v. Gotbaum* dismissed the plaintiff's hostile work environment claim, finding that allegations such as "constant" negative commentary and belittling; a false claim that the plaintiff had exhausted his annual leave, thus requiring him to return to work; belligerent actions by a supervisor, including "angrily mov[ing] closer" to the plaintiff with "his face and hands . . . tightly clenched, giving the impression that he was prepared to physically attack [the plaintiff]"; contesting the plaintiff's worker's compensation claim; and accusing the plaintiff of lying about his physical symptoms were found to constitute merely "the 'ordinary tribulations of the workplace.'"   No. 10-cv-221, 2012 WL 13036867, at *5, *10 (D.D.C. Apr. 17, 2012)

(ellipses in original) (first quoting the record and then quoting *Faragher*, 524 U.S. at 788). And in *Franklin v. Potter*, a workplace in which a supervisor frequently yelled at the plaintiff and "humiliated" him by requiring him to undergo a fitness for duty examination was not a discriminatory hostile work environment. 600 F. Supp. 2d 38, 77–78 (D.D.C. 2009). Plaintiff's claims here, too, do not rise to the level of "'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Baloch*, 550 F.3d at 1201 (quoting *Harris*, 510 U.S. at 21).

Second, many of the allegations through which Plaintiff attempts to plead a hostile work environment claim merely dress up disparate his treatment claims. For example, Plaintiff's claims for discriminatory and retaliatory failure to return him to full duty allege that the fitness for duty examination was improperly ordered and that his medical documentation was improperly rejected because of his disability and as retaliation for his protected activity. *See* ECF No. 1, ¶¶ 112–133. He points to those same allegations in describing the alleged hostile work environment he endured. *See* ECF No. 12 at 17–18. He also alleges that the denial of his request for a light duty transfer contributed to the hostile work environment, while also contending that the denial states a claim as a discrete act of discrimination and retaliation—albeit an unexhausted one. *See* ECF No. 1, ¶¶ 91–107; ECF No. 12 at 18. As noted, "courts in this Circuit 'frown on plaintiffs who attempt to bootstrap their alleged discrete acts of retaliation into a broader hostile work environment claim.'" *Hartzler*, 2022 WL 15419995, at *23 (quoting *Baloch*, 517 F. Supp. 2d at 364). Rather, "[d]iscrete acts constituting discrimination or retaliation claims . . . are different in kind from a hostile work environment claim that must be based on severe and pervasive discriminatory intimidation or insult." *Lester v. Natsios*, 290 F. Supp. 2d 11, 33 (D.D.C. 2003); *see also, e.g.*, *Bain*, 648 F. Supp. 3d at 60 ("Simply experiencing even several adverse and allegedly discriminatory "'work-related

actions by supervisors" acting within the scope of their official duties'—however objectionable that might be, and however actionable under discrete disparate treatment theories—does not necessarily mean that the employee was subjected to a hostile work environment." (quoting *Fields v. Vilsack*, 207 F. Supp. 3d 80, 95 (D.D.C. 2016)).

Third, and finally, Plaintiff fails to "crystallize for the Court how the[] disparate acts [alleged] could be seen by a trier of fact as sufficiently related to coalesce into a single hostile work environment." *Dudley v. Wash. Metro. Area Transit Auth.*, 924 F. Supp. 2d 141, 165 (D.D.C. 2013) (quoting *Mason v. Geithner*, 811 F. Supp. 2d 128, 179 (D.D.C. 2011)). "To prevail on a hostile work environment claim, a plaintiff cannot rely on 'an array of unrelated discriminatory or retaliatory acts.'" *Perry v. Wilkie*, No. 17-cv-2021, 2020 WL 1853276, at *6 (D.D.C. Apr. 12, 2020) (quoting *Ware v. Hyatt Corp.*, 80 F. Supp. 3d 218, 231 (D.D.C. 2015)). "The constituent acts must be 'adequately linked' such that they form 'a coherent hostile environment claim.' For example, they might 'involve the same type of employment actions, occur relatively frequently, and [be] perpetrated by the same managers.'" *Baird v. Gotbaum*, 792 F.3d 166, 168–69 (D.C. Cir. 2015) (quoting *Baird,* 662 F.3d at 1251). Here, Plaintiff alleges a laundry list of disparate acts that fail to meld into a coherent whole. He characterizes them as instances of "delay and intentional failure to respond," ECF No. 12 at 19, and to be sure, some of them are. But, as he also recognizes, others are different types of allegedly offensive behavior, such as "public chastising," "belittling" comments that allegedly "brewed resentment from his coworkers," and aggressive conduct involving a supervisor "slamm[ing] down" documents and "storm[ing] out" of a meeting. ECF No. 12 at 17, 19. One involves his claim for worker's compensation; others have to do with disclosure of private information or fitness for duty or requests for leave. *See id.* at 17–18. Some were allegedly perpetrated by supervisors at Presidio; some by supervisors at Santa Teresa; some

by personnel at other locations.  *See, e.g.*, ECF No. 1, ¶¶ 25–26, 28, 41, 46, 50, 52, 72.  "Where, as here, a plaintiff adopts a 'kitchen sink' approach to crafting a hostile work environment claim, the Court can only conclude that these acts are so different in kind . . . that they cannot possibly comprise part of the same hostile work environment."  *Faison v. Vance-Cooks*, 896 F. Supp. 2d 37, 65–66 (D.D.C. 2012) (rejecting a hostile work environment claim where the plaintiff "identifie[d] somewhere in the neighborhood of fifteen to twenty component acts" involving numerous agency personnel in different sections of the agency, at various supervisory levels, and in different locations); *cf. Moore v. Hayden*, No. 18-cv-2590, 2021 WL 11629829, at *13 (D.D.C. 2021) (finding "various alleged acts of discrimination and retaliation . . . sufficiently connected" where they shared "'[t]he common threads' of being actions orchestrated" by a single supervisor and designed to "exploit [the plaintiff's] disability" to make his work environment physically painful (second alteration in original) (quoting the record)).

In short, even considering Plaintiff's complaint in a light most favorable to him, although he describes a workplace and supervisors that were "hardly ideal," and he appears to "have been 'injured and inconvenienced,' and . . . 'treated . . . unkindly,'" the Court finds that he has not alleged facts that would support a claim for a discriminatory or retaliatory hostile work environment.  *Franklin*, 600 F. Supp. 2d at 78 (first quoting *Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006); and then quoting *Hancock v. Potter*, 531 F.3d 474, 480 (7th Cir. 2008)).  Therefore, Counts XII and XIII will be dismissed.

## IV.    CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss, ECF No. 9, is **GRANTED IN PART AND DENIED IN PART**.  It is granted to the extent that the Court dismisses Counts I, II, III, IV, IX, X, XII, and XIII.  It is denied to the extent that Counts VII (claiming discrimination

on the basis of disability for the failure to grant Plaintiff's request for Weather and Safety Leave), VIII (claiming retaliation for the failure to grant Plaintiff's request for Weather and Safety Leave), and XI (claiming a violation of the APA based on CBP's failure to provide him notice related to health insurance coverage) survive.  Defendants did not move to dismiss Counts V (claiming discrimination on the basis of disability for the failure to return Plaintiff to full duty) or VI (claiming retaliation for the failure to return Plaintiff to full duty), so those counts, too, are still live.

The Court expresses no opinion on whether the counts that survive Defendants' motion to dismiss are legally sound or likely to survive a motion for summary judgment should one be filed. Rather, the Court has merely ruled that the arguments Defendants raised in their motion to dismiss did not meet their burden to show "that no legally cognizable claim for relief exists" as to Counts VII, VIII, and XI.  *Cohen*, 819 F.3d at 481 (quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2015)).


**SO ORDERED.**


Date:   September 9, 2024                          _____
                                                   G. MICHAEL HARVEY
                                                   UNITED STATES MAGISTRATE JUDGE